IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  02-cv-02362-LTB-PAC

RONNIE BRUSCINO,

      Plaintiff(s),

v.

MICHAEL V. PUGH, et al.,

      Defendant(s).

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Patricia A. Coan, United States Magistrate Judge

      This is a *pro se* prisoner civil rights action against the individual defendants under *Bivens*[1] and against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§2671-2680.  An Order of Reference under 28 U.S.C. §636(b)(1)(A) and (B) referred this case to the undersigned magistrate judge on February 24, 2003 to conduct pretrial proceedings and to issue recommendations for rulings on dispositive motions. The matters before the court are Defendants' Motion for Summary Judgment & Dismissal Pursuant to Fed.R.Civ.P. 12(b)(1) [filed June 15, 2005] and Plaintiff's Motion to Submit Additional Information and Evidence to the Court [filed January 9, 2006].   The summary judgment motion is fully briefed.  The undersigned has determined that oral argument would not be of material assistance.

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 402 U.S. 388 (1971).

I.

Plaintiff is a federal inmate incarcerated at the United States Penitentiary Administrative Maximum ("ADX") in Florence, Colorado.  Plaintiff was housed in the E-unit during the relevant period.  (Declaration of Benjamin J. Brieschke, Ex. A1 to MSJ, at ¶5)

The gravamen of plaintiff's pleadings[2] is that the defendants conspired with each other to violate his constitutional rights by allowing inmate informants to read his legal and non legal mail, to search his personal property, to access plaintiff's private financial and personal information (credit card information, bank statements, social security numbers, driver's license numbers, and addresses of friends and family), and to listen to plaintiff's telephone conversations with his attorney.  Plaintiff alleges that the inmate informants, in exchange for monetary compensation from the Bureau of Alcohol, Tobacco and Firearms ("ATF") and special treatment from Bureau of Prisons ("BOP") staff, used the personal information they obtained about him to manufacture evidence against him for an ongoing criminal investigation conducted by the Federal Bureau of Investigation ("FBI") and the ATF.  (Compl., pp. 4-4C)

The Chief District Judge has dismissed all of plaintiff's claims, except the following: (1) the FTCA claim against the United States; and (2) the First Amendment claims asserted against the individual defendants in their personal capacities based on the following allegations: (a) that Defendant Watson delayed in delivering plaintiff's legal mail and allowed it to be read by inmate informants in August 2000; (b) that Defendants

_____

[2]Plaintiff filed his original complaint on December 18, 2002, and an amended complaint on January 27, 2003.  In the Amended Complaint, plaintiff incorporated the allegations of his original complaint.

2

Watson, Shoff, Gallegos and Pugh confiscated, rejected and delayed delivery of, plaintiff's incoming and outgoing non legal mail and allowed it to be read by inmate informants (sometime after August 2000); (c) that Defendant Shoff improperly rejected plaintiff's outgoing mail in September 2001 for allegedly containing information for another inmate; (d) that Defendants Collins and Gallegos refused to allow Plaintiff to correspond with other ADX inmates to obtain witness statements (in 2000 and thereafter); and (e) that Defendant Grisby opened a letter from plaintiff's attorney outside Plaintiff's presence in November 2000 and rejected a news magazine article sent to plaintiff that other inmates were allowed to receive. *See* Order, filed March 16, 2004.[3]  Plaintiff also claims that defendant Pugh, the ADX Warden, and defendant Grundy, then ADX supervisor attorney,  knew about and acquiesced in the alleged unconstitutional conduct that is the basis of plaintiff's surviving claims against the other defendants. *Id.*; *see*, *also,* March 2, 2004 Recommendation of United States Magistrate Judge.

II.

The United States moves to dismiss plaintiff's FTCA claim for lack of subject matter jurisdiction.  The party bringing an action in federal court bears the burden of showing that the case falls within the court's subject matter jurisdiction. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 512 (10th Cir. 1994).  Where the defendants' challenge to the court's subject matter jurisdiction is lodged as a facial attack on the complaint, the court must accept the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000,

---

[3]Some of plaintiff's claims were dismissed as time-barred and others were dismissed for failure to allege a constitutional deprivation.  *See* March 16, 2004 Order

3

1002 (10th Cir. 1995).  If the defendant goes beyond the allegations of the complaint and challenges the facts upon which subject matter jurisdiction depends, the court may not presume the truthfulness of the plaintiff's factual allegations, but must resolve disputed issues of fact.  *Id.* at 1003.  In such a case, the court's reference to documents outside the pleadings does not convert the Rule 12(b)(1) motion into a Rule 56 motion.  *Id.*

The individual defendants move for summary judgment on plaintiff's remaining *Bivens* claims against them.  The purpose of summary judgment is to determine whether trial is necessary.  *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The movant bears the initial burden to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law."  *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).  If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to [the nonmovant's claim]."  *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir. 1993)(internal citations omitted).  The nonmovant has the burden to show that there are genuine issues of material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant.  *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir. 1995).  To defeat a properly supported motion for

4

summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Conclusory allegations will not create a genuine issue of material fact necessitating trial.  *White*, 45 F.3d at 363.

In addition, the individual defendants have asserted the qualified immunity defense in response to plaintiff's constitutional claims against them in their personal capacities for monetary relief.  Qualified immunity shields public officials from civil damages liability if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a public official raises the defense of qualified immunity, the plaintiff must first establish that the complained of conduct constitutes a violation of a constitutional or statutory right. *See Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003)(internal citation omitted).  If plaintiff shows a constitutional violation, the court next determines whether the constitutional right was clearly established at the time of the defendant's allegedly unlawful conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the plaintiff fails to satisfy either part of the bipartite inquiry, the court must grant the defendant qualified immunity. *Smith*, 339 F.3d at 1211.  If the plaintiff establishes that defendant's conduct violated a clearly established right, the burden shifts to the defendant to prove that "there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Medina v. Cram*, 252 F.3d 1124, 1128(10th Cir. 2001)(internal quotation omitted).

III.

A.    <u>FTCA Claim</u>

Plaintiff seeks relief against the United States under the FTCA based on prison officials' destruction and confiscation of his personal and legal property, including letters, legal files, a Bible, a book of stamps, and a gold chain. (*See* Claim for Damage, Injury or Death, filed with the BOP on December 12, 2001,[4] attached to Complaint)   The United States moves to dismiss plaintiff's FTCA claim for lack of subject matter jurisdiction under Fed.R.Civ.P. 12 (b)(1).

It is a fundamental principle of sovereign immunity that the United States may not be sued without its consent.  *United States v. Mitchell*, 463 U.S. 206, 212  (1983). "When the United States consents to be sued, the terms of [the] waiver of sovereign immunity define the extent of the court's jurisdiction."  *United States v. Mottaz*, 476 U.S. 834, 841 (1986); *see, also, United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992)(stating that "[w]aivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed,'" and must be construed strictly in favor of the sovereign)(internal citations omitted).

The FTCA is a limited waiver of the United States' sovereign immunity for claims arising out of the negligent or wrongful actions or omissions of a government employee while acting within the scope of his office or employment.  28 U.S.C. §1346(b), §2674; *FDIC v. Meyer*, 510 U.S. 471, 477 (1994).  The Act's waiver of sovereign immunity is

_____

[4]The BOP denied plaintiff's administrative tort claim on July 8, 2002.  (*See* denial letter attached to Amended Compl.)

6

subject to the exceptions enumerated in 28 U.S.C. §2680.  A federal court lacks subject matter jurisdiction over an action that falls within one of the exceptions provided in the FTCA.  *Baird v. United States*, 653 F.2d 437, 440 (10th Cir. 1981).

Section 2680(c) states that "[t]he provisions of this chapter and section 1346(b) of this title shall not apply to –   . . . [a]ny claim arising in respect of the . . . detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer."  28 U.S.C. §2680(c) (2000).

A claim is within the purview of 28 U.S.C. §2680(c) if it is one "arising out of" the detention of property.  *Kosack v. United States*, 465 U.S. 848, 854 (1984)(holding that the phrase "arising in respect of" includes any claim "arising out of" the detention of goods and merchandise, including negligent handling or storage of detained property).  Thus, section 2680(c) bars a claim premised upon an injury to property, or the loss or destruction thereof, resulting from an official detention.

The phrase "other law enforcement officer" includes BOP employees.  *See Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003)(concluding that prison employees are "law enforcement officer[s]" within the meaning of 28 U.S.C. §2680(c)); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002)(holding that "the district court did not err in finding that §2680(c) applies where a prisoner alleges that defendant prison officials detained his personal property and mailed it outside the prison"); *see, also, Chapa v. United States*, 339 F.3d 388, 390 (5th Cir. 2003)(concluding that BOP officials are law enforcement officers within the meaning of 28 U.S.C. §2680(c)); *Bramwell v. U.S. Bureau of Prisons,* 348 F.3d 804, 807 (9th Cir. 2003)(same); *but see U.S. v. Andrews,*

7

___ F.3d ___, 2006 WL 168054 at *4 (4th Cir. 2006)(applying the *noscitur a sociis* canon[5] and holding that "§2680(c)' s specific references to the enforcement of tax and customs laws indicates that the `law enforcement officer' referenced therein should be limited to those officers acting in a tax and customs enforcement capacity"); *Ortloff v. United States*, 335 F.3d 652, 660 (7th Cir. 2003)(concluding that §2680(c) applies solely to law enforcement officers acting in the customs or excise capacity and therefore excludes BOP officials).

Plaintiff asserts that the §2680(c) exception does not apply because his property was "detained" by inmate informants, who cannot be characterized as law enforcement officers. Plaintiff concedes, however, that the initial confiscation of his property was at the hands of prison officials. Thus, even if the property was in the custody of other persons for a period of time, that custody was authorized by the prison officials who seized it. Accordingly, plaintiff's argument is without merit.

Based on controlling Tenth Circuit law, I recommend finding that ADX correctional officials' confiscation of plaintiff's personal and legal property was a "detention of goods, merchandise of other property" by "law enforcement officers" under 28 U.S.C. §2680(c). Because the exception applies, plaintiff's FTCA claim should be dismissed for lack of subject matter jurisdiction.

---

[5]According to the *noscitur a sociis* canon, the meaning of an undefined word or phrase "should be determined by the words immediately surrounding it." Black's Law Dictionary 1087 (8th ed.2004).

B.      *Bivens* Claims

      1.      <u>Claims that Defendants Delayed Delivery of Plaintiff's Mail
and Gave the Mail to Inmate Informants</u>

Plaintiff claims that defendants Watson, Shoff, Gallegos and Pugh confiscated, rejected and delayed delivery of, Plaintiff's incoming and outgoing non-legal mail and allowed it to be read by inmate informants (sometime after August 2000).

Prisoners enjoy a First Amendment right to send and receive mail and to associate with others. *See Procunier v. Martinez*, 416 U.S. 396, 408-409 (1974), *over-ruled in part on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)*; Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977). An inmate's exercise of constitutional rights is necessarily limited, however, "both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." *Pell v. Procunier*, 417 U.S. 817, 822-23 (1974); *see, also, Jones*, 433 U.S. at 129.

The only "evidence" plaintiff has to support his claim that the defendants gave his mail to other inmates to read is the hearsay statement of Tony Gurule, who, in response to plaintiff's deposition questions upon written interrogatories, states that Danny Weeks, a former inmate informant for the BOP, told Gurule while they were both housed temporarily at a BOP medical center in Springfield, Illinois, that plaintiff had been targeted for prosecution by prison officials and that inmate informants in the ADX H-Unit were instructed to manufacture "a case" against plaintiff. (*See* Plaintiff's Response brief, Ex. 1) According to Gurule, Weeks went on to describe in detail some of the items of plaintiff's

property, including plaintiff's legal mail, that was confiscated and given to other inmates. (*Id.*)   Gurule's hearsay statements are not sufficient to withstand defendants' summary judgment motion, however, because they are inadmissible in court.

"It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir.1995). While the party opposing summary judgment "need not produce evidence in a form that would be admissible at trial, . . . the content or substance of the evidence must be admissible." *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir.1995) (citations and internal quotation marks omitted).   A third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill." *Id.* (citations and internal quotation marks omitted).

No exceptions to the hearsay rule apply to Gurule's testimony and plaintiff has not submitted a sworn statement from Mr. Weeks[6] in support of his claims against the defendants.   Accordingly, I recommend that summary judgment be granted for defendants on plaintiff's claims that defendants gave plaintiff's mail to inmate informants in the H-unit.

Moreover, except for the specific incidents analyzed in Section III.B.2-5, *infra*, plaintiff has not proffered any evidence to support his claim that any of the named defendants intentionally withheld or delayed delivery of his mail during the relevant time

---

[6]I note that the court granted plaintiff permission to depose Mr. Weeks by written interrogatories. *See* April 26, 2005 Order.   Although defendants' first efforts to serve Mr. Weeks with plaintiff's written interrogatories failed because of an incorrect address, I ordered defendants to re-serve them.   *See* July 5, 2005 Order.   Plaintiff has not advised the court of any further problems, attributable to the defendants, in obtaining interrogatory responses from Mr. Weeks.

period.[7]  Accordingly, I recommend that defendants' motion for summary judgment be granted as to plaintiff's unsupported allegations that defendants confiscated or delayed delivery of his mail.

I further recommend that plaintiff's Motion to Submit Additional Information and Evidence to the Court, filed January 9, 2006, be denied because the court transcripts submitted by plaintiff from proceedings in *United States v. Mills*, Criminal Case No. 02-938 (C.D.Cal. June 2005), do not tend to establish that plaintiff's mail was being read by inmate informants at times relevant to the instant action and for the reasons discussed in n.7, *supra.*

> 2.    Specific Incidents when Plaintiff's Legal Mail was Opened
>        and Delivery Delayed

Plaintiff claims that defendant Watson, the ADX inmate systems manager who is responsible for incoming and outgoing mail, did not deliver a letter sent to plaintiff from his attorney in early July 2000 that was clearly marked "legal mail" for several weeks. (Amended Compl., pp. 4I-J[8])  Plaintiff states that the legal letter was opened outside of plaintiff's presence.

---

[7]I note that plaintiff filed a Motion to Submit Additional Information and Evidence to the Court on January 9, 2006 in which plaintiff asserts recent specific instances when delivery of his incoming mail was delayed and his outgoing mail was confiscated and not returned to him.  However, those incidents occurred in October 2005 and thereafter and implicate individuals who are not named defendants in the instant action.  Plaintiff's remedy for those alleged First Amendment violations is to file a new *Bivens* complaint after exhausting his administrative remedies.

[8]I treat the Complaint and Amended Complaint as sworn affidavits for purposes of summary judgment because plaintiff has declared the facts stated in those documents to be true and correct under penalty of perjury under 28 U.S.C. §1746.  *See Green v. Branson*, 108 F.3d 1296, 1301 and n.1 (10th Cir. 1997).

Plaintiff also claims that defendant Grisby, an ADX mail room officer, delivered a letter to plaintiff from plaintiff's attorney in November 2000 after the letter had been opened outside of plaintiff's presence and resealed. (Amended Compl., pp. 4R-4S)

An inmate has a First Amendment right to be present when prison officials open his legal mail to search for contraband. See *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Ramos v. Lamm*, 485 F.Supp. 122, 164 (D.Colo. 1979), *aff'd in part and set aside in part on other grounds by* 639 F.2d 559 (10th Cir. 1980); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). However, an isolated incident of legal mail tampering does not violate the Constitution; instead, the inmate must show a pattern or practice of opening an inmate's legal mail outside his presence. *Davis*, 320 F.3d at 351; *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3rd Cir. 1995), *rev'd in part on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).

In *Smith v. Maschner*, 899 F.2d 940, 943-44 (10th Cir.1990), the Tenth Circuit considered an inmate's claim that his constitutional rights were violated when prison officials opened and inspected his legal mail. *Id.* In that case, prison officials opened one piece of constitutionally protected legal mail by accident. The Tenth Circuit held that "[s]uch an isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right . . . of access to the courts, does not give rise to a constitutional violation." *Id.* at 944.

There is evidence in the record tending to show that the July 2000 letter to plaintiff from his attorney was opened outside plaintiff's presence. (Ronnie Bruscino Deposition, at 94-95) However, plaintiff does not point to any evidence to support his assumption that

12

the November 2000 legal letter was opened before defendant Grisby delivered it to plaintiff. Likewise, plaintiff has not offered any evidence which would support a reasonable inference that the single incident in July/August 2000 was the product of improper motive,[9] nor has plaintiff demonstrated that defendants Watson, Grisby or any of the other defendants engaged in a pattern or practice of opening plaintiff's legal mail outside his presence.

Moreover, even if defendant Watson were responsible for a three week delay in delivery of the July 2000 legal letter to plaintiff, isolated incidents of mail delay do not violate the Constitution. *See Zimmerman v. Tribble,* 226 F.3d 568, 572-73 (7th Cir. 2000).

Accordingly, I recommend that summary judgment be granted in favor of defendants on plaintiff's claim that defendants Grisby and Watson violated plaintiff's First Amendment rights by opening plaintiff's legal mail outside his presence and delaying the delivery of one legal letter.

3.      Rejection of Plaintiff's Outgoing Mail

Plaintiff's next claim is that defendant Shoff, an ADX special investigative agent, rejected improperly plaintiff's outgoing certified letter to a non prisoner in September 2001 on the claimed basis that it contained information for another inmate. (Amended Compl., pp. 4L) According to plaintiff, the letter was rejected because it "gave detailed information concerning Warden Pugh and several other officials at the ADX illegally allowing inmate

---

[9]Plaintiff's right of access claim was dismissed by the Court on March 16, 2004 for failure to state a claim upon which relief can be granted.

informants to read my incoming and outgoing mail, as well as several other inmates." (*See* Plaintiff's Response, Ex. 13, Inmate Request to Staff Member, dated October 14, 2001)

In *Procunier v. Martinez*, 416 U.S. at 414, the Supreme Court held that prison regulations censoring inmate mail must further an important or substantial government interest and the regulations must be no greater than is necessary to protect the government interest involved.[10] "Prison officials may not censor inmate correspondence [to non inmates] simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." *Id.* However, a prisoner's personal outgoing mail may be restricted if it poses a threat to the security and order of the prison system. *Id.*, *see, also,* *Thornburgh*, 490 U.S. at 411-12. The Tenth Circuit has applied the *Martinez* standard to First Amendment claims challenging prison censorship of outgoing mail. *See Treff v. Galetka*, 74 F.3d 191, 194-95 (10th Cir. 1996); *Beville v. Ednie*, 74 F.3d 210, 214 (10th Cir. 1996).

It is not clear that the *Martinez* standard applies here, however, because the Supreme Court has more recently clarified that the deferential *Turner v. Safley*, 482 U.S. 78 (1987) standard governs all First Amendment challenges to limits on inmate correspondence. *See Shaw v. Murphy*, 532 U.S. 223, 226 (2001)(applying *Turner* to an inmate's claim that prison officials violated his First Amendment rights by  censoring his letters to other inmates which contained legal advice.)

---

[10]The Supreme Court limited the *Martinez* holding to outgoing correspondence  in *Thornburgh*, 490 U.S. at 413.

14

Under *Turner*, prison regulations which impinge on an inmate's constitutional rights are valid if they are "reasonably related to legitimate penological interests." 482 U.S. at 89. The Supreme Court identified four factors that are relevant to the reasonableness inquiry. First, "there must be a `valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* at 89 (internal quotation omitted). Second, if alternative means of exercising the constitutional right are available to the inmate, courts should accord prison officials substantial deference in determining the validity of the regulation. *Id.* at 90. A third consideration is the impact the accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources. *Id.* Finally, the existence of "obvious, easy alternatives" that fully accommodate the inmate's rights at de minimis cost to valid penological interests indicates that the prison regulation is not reasonable, but is an "exaggerated response" to prison concerns." *Id.* at 90-91.

The record shows that BOP staff advised plaintiff that the Special Investigative Services ("SIS") unit had rejected plaintiff's letter for mailing. (*See* Plaintiff's Response, Ex, 10). Defendant Warden Pugh told plaintiff in response to plaintiff's administrative remedy request that the letter was rejected for mailing "because it provides information through a third party for another incarcerated inmate." (Brieschke Declaration, ¶8, and Attachment 8, November 1, 2001 administrative remedy response) The warden also advised plaintiff that staff members were unable to locate plaintiff's letter and therefore could not return it to him. (*Id.*, attachment 8) There is no evidence in the record to show that the censored letter exists.

15

The Federal Rules of Evidence provide that the original writing is required to prove the contents of that writing.  Fed.R.Evid. 1002.   However, if the original writing has been lost or destroyed  (so long as the proponent did not lose or destroy the writing in bad faith), the proponent may prove the contents of the writing with secondary evidence. Fed.R.Evid. 1004(1).  Plaintiff was not responsible for the loss or destruction of the letter.  Accordingly, he could prove his claim with secondary evidence of the contents of that writing, including his own testimony.  *See* Fed.R.Evid.1004; *United States v. Billingsley*, 160 F.3d 502, 505 n.2 (8th Cir. 1998)(recognizing that oral testimony as to contents of destroyed tape was admissible under Fed.R.Evid. 1004); *United States v. McGaughey*, 977 F.2d 1067, 1072 (7th Cir. 1992)(stating that "anything that tends to demonstrate the writing's contents may constitute secondary evidence" admissible under Fed.R.Evid. 1004).

Plaintiff asserts that defendants' real reason for rejecting the letter was because it exposed ADX staff's use of inmate informants in the H-unit, but plaintiff does not provide any other specific details about the contents of the letter.

The defendants' evidence shows that the letter was rejected because it contained information meant to be relayed to another inmate.  Assuming that defendants' characterization of the contents of the letter is correct, in the absence of any evidence from plaintiff to the contrary, I recommend finding, under the *Turner* factors, that there is a valid, rational connection between ADX officials' policy of rejecting outgoing correspondence that provides information through a non prisoner for another incarcerated inmate and the maintenance of prison security.

16

In *Turner*, 483 U.S. at 91-93, the Supreme Court upheld a state prison regulation banning correspondence between inmates, except in limited circumstances,[11] for security reasons.     The BOP has also promulgated a regulation that restricts inmate correspondence with inmates in other penal or correctional institutions. 28 C.F.R. §540.17. Inmate to inmate correspondence is allowed only if the other inmate is a member of the inmate's immediate family or is a party or witness in a legal action in which both inmates are involved.   An inmate's written communications with another inmate through a third party present the same security concerns as inmate to inmate correspondence. Accordingly, I find that the rejection of plaintiff's outgoing mail was rationally related to a legitimate penological interest.  To satisfy the first *Turner* factor, the prison administration need only "make a minimal showing that a rational relationship exists between its policy and stated goals." *Beerheide v. Suthers*, 286 F.3d 1179, 1186 (10th Cir. 2002); *see, also, Amatel v. Reno*, 156 F.3d 192, 199 (D.C.Cir. 1998)(stating that pertinent inquiry under the first *Turner* factor is whether prison administrators might reasonably have thought that the policy would advance the asserted penological interest); *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999)(same). It cannot be said that the logical connection between the prison policy and the maintenance of order and security within the prison system is "so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90.

Under the second *Turner* factor, plaintiff has an alternative means of exercising his asserted First Amendment rights because he is allowed to communicate with others by

---

[11]The state regulation permitted inmates to correspond with other inmates who were immediate family members and between inmates "concerning legal matters." *Turner*, 482 U.S. at 83.

17

mail on a wide range of subjects.  Third, allowing plaintiff to send correspondence to non prisoners for transmittal to other prisoners has the potential of breaching prison security, requiring the expenditure of additional prison resources.  Finally, plaintiff does not identify any alternative that fully accommodates the asserted right at de minimis cost to valid penological interests.

Even under the stricter *Martinez* standard, to the extent that standard still applies, I find that the BOP's rejection of plaintiff's outgoing correspondence  furthers an important governmental interest unrelated to the suppression of expression.  Restricting inmates from making an end run around the prohibition against inmate-to-inmate correspondence by precluding written correspondence to non prisoners that is intended to be relayed to another inmate is generally necessary to achieve the stated goal of protecting the internal order and security of the prison.  "Prison administrators are not required to show with certainty that adverse consequences would  flow from the failure to censor a particular letter."  *Martinez,* 416 U.S. at 414.

On summary judgment it is the plaintiff's burden to demonstrate the existence of factual issues necessitating a trial.  *See* Fed.R.Civ.P. 56(e).  Plaintiff has not met his burden to demonstrate to the court that the contents of the letter could not be construed as information to be communicated to another inmate.  Plaintiff has thus failed to demonstrate the existence of a material factual issue about whether defendants' rejection of the letter was reasonably related to security interests under *Turner. See Shaw* 532 U.S. at ___ , 121 S.Ct. at 1481 (recognizing that inmate asserting First Amendment violation "must overcome the presumption that the prison officials acted within their "broad

discretion'")(quoting *Thornburgh*, 490 U.S. at 413).  Accordingly, I recommend that defendants' motion for summary judgment be granted on plaintiff's claim that his outgoing correspondence was rejected in September 2001.[12]

    4.    <u>Refusal to Allow Plaintiff to Correspond with Other ADX Inmates</u>

Plaintiff also claims that defendants Collins and Gallegos refused to allow him to correspond with other ADX inmates to obtain witness statements and evidence plaintiff needed to file a civil rights complaint (in 2000 and thereafter).  (Amended Compl., pp. 4L-4O)

Plaintiff does not state specifically what "evidence" he needed to file a civil rights complaint in 2000, nor does he describe the content of the statements he hoped to receive from other inmates.  In response to an Inmate Request to Staff submitted by plaintiff in November 2000, defendant Warden Pugh referred plaintiff to 28 C.F.R. §540.17 and told plaintiff to contact his unit team manager. (Defendants' MSJ, Brieschke Declaration, at ¶6, and attachment 2) Defendant Collins, plaintiff's unit manager,  advised plaintiff in January 2001, in response to plaintiff's inmate request to staff member, that he had denied plaintiff access to "affidavits, statements and evidence" from other inmates because at that time, neither the plaintiff nor any of the inmates from whom plaintiff sought statements and evidence was a party or a witness to a pending legal proceeding. (*Id.*, attachments 3, 4).

---

[12]I note that in a different, but somewhat related context, the federal district court in the Central District of Illinois granted summary judgment in favor of prison officials on a prisoner's First Amendment claim challenging the defendants' rejection of numerous incoming publications where plaintiff could not produce some of the publications because they had been confiscated, the defendants testified that the rejection of those publications was based on legitimate security concerns, and the other publications before the court were properly rejected as posing a threat to prison security, so that the court assumed that the contents of the missing publications were similar.  *See Van Dyke v. Washington*, 896 F.Supp. 183, 189 and n.3 (C.D.Ill. 1995).

As discussed in Section III.B.3, *supra*, 28 C.F.R. §540.17 prohibits inmates from corresponding with other inmates unless the other inmate is "either a member of the immediate family, or is a party or witness in a legal action in which both inmates are involved."[13] This regulation is rationally related to the BOP's legitimate penological interest in maintaining security and order within the prisons.  *See Turner*, 483 U.S. at 91-93. Plaintiff argues that 28 C.F.R. §540.17 applies only to an inmate's correspondence with inmates confined at other correctional institutions and does not govern written communications between inmates at the same institution.  Plaintiff's argument is an unavailing effort to elevate form over substance.  Although the federal regulation does not specifically address written communications between inmates housed at the same institution, the same security concerns clearly apply.

Plaintiff also contends that defendant Collins acted contrary to BOP Program Statement 1315.07(f)(1) (November 5, 1999).  The Program Statement states: "[Unless restricted by the warden for security reasons], an inmate may assist another inmate in the same institution . . . with legal research and the preparation of legal documents for submission to a court or other judicial body."  *See www.bop.gov/policy/progstat.*

Plaintiff's argument is not persuasive.  The program statement appears to be directed to circumstances where inmates act as jailhouse lawyers for other inmates.  In *Shaw v. Murphy*, 532 U.S. at __, 121 S.Ct. 1479-80, the Supreme Court, after reaffirming its prior holdings that *Turner* provides the test for evaluating prisoners' First Amendment

---

[13]The inmate's unit manager must approve all inmate-to-inmate correspondence if both inmates are housed in federal correctional institutions.  28 C.F.R. §540.17(b)(1).  The warden must approve the correspondence if the other inmate is housed at a non-Federal institution.  28 C.F.R. §540.17(b)(2).

challenges, held that  inmate-to-inmate correspondence that includes legal advice or assistance does not receive more First Amendment protection than any other correspondence.[14] The Court reasoned that the *Turner* factors "concern only the relationship between the asserted penological interests and the prison regulation" without regard to content.  *Id.*  The Court further stated that affording special protection to prisoner speech that includes legal advice would undermine prison officials' ability to manage the "complex and intractable" problems of prison administration.  *Id.* The Court recognized that legal correspondence between inmates can be used "as a means for passing contraband and communicating instructions on how to manufacture drugs or weapons," and "could be an excuse for making clearly inappropriate comments, which `may be expected to circulate among prisoners."  *Id.*[15]

Accordingly, to the extent Program Statement 1315.07(f)(1) applied to plaintiff's intended correspondence with other inmates housed at the ADX to obtain "evidence" to support a civil rights complaint plaintiff was drafting, those communications were not entitled to any greater First Amendment protections solely because the subject matter was legal in nature.

Because plaintiff has not proffered any evidence to show that the inmates from whom he sought statements and evidence in 2000 and early 2001 were parties or witnesses to a then-pending legal proceeding to which plaintiff was a party, I recommend

---

[14]In *Shaw*, the "inmate law clerk" plaintiff was attempting to correspond with another inmate in the same institution.  121 S.Ct. at 1477.

[15]The Supreme Court remanded the case to the lower federal court to determine whether the prison regulations applied to the inmate were reasonably related to legitimate penological interests.  121 S.Ct. at 1481.

finding that defendants' actions in denying plaintiff's requests to obtain evidence and statements from other inmates, pursuant to 28 C.F.R. §540.17, was rationally related to the defendants' legitimate penological interest in maintaining prison security.[16]  Summary judgment should be granted in favor of defendants.

     5.    <u>Rejection of Incoming News Magazine Article</u>

Plaintiff finally claims that defendant Grisby confiscated a news article enclosed in a letter sent to plaintiff by his attorney in July/August 2000, and that Grisby advised plaintiff that he could not have the article pursuant to ADX policy.  (Amended Complaint, at pp. 4S-4T)  Plaintiff states that other ADX inmates were allowed to receive the news article. (*Id.*)

The article in question is titled "A Broken Code: The supermax snitch unit was supposed to bust prison gangs, but who was really rolling over?" and appeared in the Denver news magazine "Westword" in July 2000. (Plaintiff's Renewed Motion for Production of Documents, filed December 2, 2004, Ex. 1)

---

[16]I note that the court's file contains some documents plaintiff filed (after the date of the Amended Complaint) in which he complains that he cannot prosecute this action because defendant Collins refused to allow him to correspond with inmate witnesses for security reasons - specifically, because the inmates with whom plaintiff sought to correspond were not plaintiff's co-defendants.  *See* Inmate Request to Staff, dated May 2003, and related documents attached to plaintiff's August 11, 2003 Response to Preliminary Scheduling Conference; Plaintiff's October 16, 2003 Response to Defendant Schoff's Motion to Dismiss, Ex. 5.  Defendant Collins apparently has construed 28 C.F.R. §540.17 to allow inmate-to-inmate correspondence only between immediate family members and between inmates who are co-defendants in a pending criminal proceeding.  I do not address Collins' policy interpretation, however, because the events in May and June 2003 occurred after plaintiff filed his Amended Complaint and plaintiff has not challenged the immediate family members and criminal co-defendants limitation on inmate-to-inmate correspondence.

Importantly, for purposes of this proceeding, the court has allowed plaintiff the opportunity to submit depositions upon written interrogatories to the intended inmate witnesses (except for three inmates who were then protected witnesses in a criminal proceeding ) so that plaintiff could prosecute his case.  *See* April 26, 2005 Order; June 1, 2005 Minute Order.  The interrogatories were served by prison staff.

Defendant Warden Pugh advised plaintiff on November 15, 2000 that the article was rejected on the following grounds:

> [P]ages one through seven contain information about a prison's internal operations which may be suitable for non-prison audiences but may cause security concerns if given to an incarcerated person. Specifically, the materials included in this mailing described a method of constructing an explosive device with materials available from the inmate commissary.

(Plaintiff's Renewed Motion for Production of Documents, filed December 2, 2004, Ex. 2); *see, also,* Plaintiff's MSJ Response brief, Ex. 4, Warden Pugh's December 20, 2000 administrative remedy response (stating "the article was determined to be detrimental to the security, good order, and discipline of the ADX")

The Westword article is based on federal prisoner Danny Weeks' account of former members of the Aryan Brotherhood prison gang who decided to cooperate with the government. According to Weeks, the former gang members were housed in the ADX H-unit when they informed prison officials about gang methods for breaching prison security and obtaining cooperation from prison staff. The article, at p. 4, reports: "Readily available commissary items such as shaving powder, hair cream and coffee creamer served as raw materials for smoke bombs, fire bombs and disfiguring hot-oil baths." (Plaintiff's Renewed Motion for Production of Documents, filed December 2, 2004, Ex. 1)

The First Amendment protects a prisoner's right "to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753 (1972)(internal citations omitted). However, the prison may impose restrictions on inmates' incoming mail if those restrictions are reasonably related to legitimate penological interests. *Thornburgh*, 490 U.S. at 413

The BOP has promulgated regulations that generally permit an inmate to subscribe to, or receive, a publication without prior approval, *see* 28 C.F.R. §§540.70 and 540.71, but the regulations also authorize the warden to reject a publication if it is "detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." 28 C.F.R. §540.71(b). Publications which may be rejected include those which "depict[ ] or describe[ ] procedures for the construction or use of weapons, ammunition, bombs or incendiary devices." *Id.* The warden may not reject a publication "solely because its content is religious, philosophical, political, social or sexual, or because its content is unpopular or repugnant." *Id.* The warden is prohibited from establishing an excluded list of publications; instead, each incoming publication must be reviewed prior to rejection. 28 C.F.R. §540.71(c). The facial constitutionality of the BOP's regulations governing incoming publications was upheld in *Thornburgh*, 490 U.S. at 415-419. Accordingly, I consider only whether Warden Pugh's application of the regulations to plaintiff comported with *Turner.*

I recommend a finding that defendant Warden Pugh's rejection of the Westword article was rationally related to legitimate prison security concerns. Although the article does not literally describe a bomb-making method, it does discuss the materials available in the prison commissary from which a bomb could be constructed by a resourceful inmate. Further, the general content of the article – that government informant inmates were housed in the H-unit at the ADX – could be disruptive to internal security because of other inmates' perceptions that those persons were "snitches."

24

Plaintiff argues that the warden's security justifications for rejecting the Westword article were disingenuous because other inmates at ADX were allowed to receive the article.[17]  Indeed, plaintiff later obtained a copy of the article himself and submitted it to this court. However, the fact that copies of objectionable publications somehow made it into the prison does not negate the warden's evaluation of the article as a security risk at the time it was to be delivered to plaintiff. *See Thornburgh*, 490 U.S. at 417 (recognizing that application of BOP regulation governing incoming publications may produce what appear to be inconsistent results, but that such apparent inconsistencies were not necessarily signs of arbitrariness or irrationality.)

Accordingly, defendants' motion for summary judgment should be granted on plaintiff's claim that his First Amendment rights were violated when defendant Warden Pugh rejected the Westword article sent to plaintiff in July/August 2000.[18]

IV.

For the reasons set forth above, it is

---

[17]Plaintiff states that he "learned" from inmate Russel Simas that another inmate in the E-unit, Richard Scutari, received the Westword Article approximately two to four weeks before defendant Grisby confiscated it from plaintiff's mail. *See* Bruscino Declaration attached to MSJ Response brief; *see, also*, Plaintiff's MSJ Response brief at 10.  Simas told plaintiff that he read Scutari's copy of the article. Plaintiff's Response, at 10.  Plaintiff states that inmates Simas and Scutaris are willing to file affidavits with the court  attesting to these facts. *Id.*  However, as discussed in the text above, the additional evidence would not be sufficient to withstand defendant's motion for summary judgment on plaintiff's claim.

[18]I note that plaintiff's complaint contains one additional claim that was overlooked in deciding defendants' earlier Rule 12(b)(6) motions.  Plaintiff states that on April 5, 2001, unidentified defendants rejected a copy of a complaint filed by ADX inmate Danny Weeks which was then pending in this court because the complaint provided "the names, driver's license numbers, and addresses of individuals." (Compl., at 4B) I do not reach the merits of this claim because there is no evidence in the record that plaintiff exhausted his administrative remedies; failure to exhaust administrative remedies was one of the grounds for dismissal asserted in defendants' Rule 12(b)(6) motions which were thereafter the subject of the District Judge's March 16, 2004 Order.

25

**RECOMMENDED** that Defendants' Motion for Summary Judgment & Dismissal Pursuant to Fed.R.Civ.P. 12(b)(1) [filed June 15, 2005] be **GRANTED**.  It is

**FURTHER RECOMMENDED** that Plaintiff's Motion to Submit Additional Information and Evidence to the Court [filed January 9, 2006] be **DENIED.**  It is

**FURTHER RECOMMENDED** that this action be **DISMISSED WITH PREJUDICE**.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated February 21, 2006.

BY THE COURT:

s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge

26